T.C. Memo. 2013-188

UNITED STATES TAX COURT

JOANNE L. OSBAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1366-11L.                           Filed August 19, 2013.

Joanne L. Osband, pro se.

<u>Lisa M. Oshiro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d)(1),[1] petitioner

seeks review of respondent's determination to proceed with collection.  The issues

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] for decision are: (1) whether petitioner is liable for a frivolous return penalty of $5,000 under section 6702(a) for 2005, 2006, and 2007 and (2) whether respondent abused his discretion in sustaining a proposed levy and a notice of Federal tax lien for 2005, 2006, and 2007.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time she filed the petition, petitioner resided in the State of Washington.

I.      Petitioner's Tax Returns

Petitioner filed Federal income tax returns for 2005, 2006, and 2007 on Forms 1040, U.S. Individual Income Tax Return. On her 2005 return she reported wages of $548, taxable interest of $190, a business loss of $13,239, zero tax due, and $15 of Federal income tax withholding. She claimed a refund for the $15 of withholding. Gregory J. Schmitt, a certified public accountant (C.P.A.) based in Chehalis, Washington, prepared her return.

Petitioner subsequently moved from Chehalis to Olympia, Washington. There she met Teresa Marty, a C.P.A. and enrolled agent based in Placerville, California, through a friend of a friend. Ms. Marty prepared petitioner's Federal income tax returns for 2006 and 2007. On her 2006 return petitioner reported

[*3] taxable interest of $227, a business loss of $4,462, a capital loss of $3,000,[2] a taxable pension and annuity distribution of $14,235, total tax due of $1,424, a credit for Federal telephone excise tax paid of $30, and zero Federal income tax withholding. On her 2007 return she reported taxable interest of $115, a business loss of $513, a capital loss of $3,000, zero tax due, and zero Federal income tax withholding.

On September 13, 2008, petitioner filed amended Federal income tax returns for 2005, 2006, and 2007 on Forms 1040X, Amended U.S. Individual Income Tax Return (amended tax return), reporting fictitious interest and withholding of $20,800, $16,500, and $21,100, respectively. Underneath the preprinted heading "Explanation of Changes" she wrote that the changes were due to "additional infromation [sic] not previously available". She claimed refunds of $20,800, $14,616, and $20,372 for 2005, 2006, and 2007, respectively. Ms. Marty had prepared the amended tax returns.

On October 6, 2008, the IRS mailed petitioner a letter requesting "Forms W-2 or 1099 for the change in withholding" that she claimed. On November 3, 2008, the IRS erroneously issued her a refund of $24,828.64, consisting of the $20,800

---

2 Petitioner reported a capital loss of $13,500 on Schedule D, Capital Gains and Losses, but she was limited to recognizing $3,000 of the loss pursuant to sec. 1211(b).

**[*4]** she claimed on the amended tax return for 2005 and interest of $4,028.64. On November 6, 2008, she mailed the IRS falsified Forms 1099-OID, Original Issue Discount (OID forms), purporting to be from State Farm Bank, American Express, Chase, Citibank, and other financial institutions. Ms. Marty had also prepared the OID forms.

On January 16, 2009, the IRS mailed petitioner a letter informing her that the IRS had determined that her amended tax return for 2006 was frivolous (frivolous submission letter). The frivolous submission letter warned her that section 6702 imposes a $5,000 penalty for the filing of a frivolous tax return or purported tax return and provided her with an opportunity to correct her submission within 30 days. Underneath the heading "What You Need To Do", the frivolous submission letter stated:

> Send us corrected return(s) for the taxable period(s) within 30 days of the date of this letter. If you send us corrected return(s), we will disregard the previous document(s) filed and not assess the frivolous tax submissions penalty to each correct return filed.
>
> Please attach this letter to your corrected return(s) and mail to the address shown at the top of this letter. We have enclosed a copy of this letter for your records and an envelope for your convenience.

**[*5]** On February 3, 2009, and April 3, 2009, the IRS mailed petitioner frivolous submission letters relating to her amended tax returns for 2007 and 2005, respectively.

Petitioner did not take advantage of the opportunity that the IRS provided her in the frivolous submission letters. On February 10, 2009, she mailed the IRS a letter in which she stated:

> I am sending copies of the letters you sent me: January 16, 2009 and February 3, 2009 regarding 1040X for tax years 2006 & 2007. I also sent copies to my tax accountant, Teresa Marty.
>
> I do not want to be charged a penalty, but I want you to know that my tax accountant will be taking care of answering your questions. I expect this will fall into the window of the 30 days in which to respond. That is why I am writing.
>
> Would you please make a note that I have responded. I have not done anything wrong and hope that we get this resolved soon. I would like to know exactly what makes the tax considered frivolous.

On April 13, 2009, she mailed the IRS a very similar letter regarding her amended tax return for 2005.

## II. Frivolous Communications

On April 6, 2009, the IRS made a "quick assessment" against petitioner of $20,800 (the amount of the erroneous refund) in tax and $4,593.43 of interest with

**[\*6]** respect to 2005. On June 8, 2009, the IRS mailed her a collection notice to remind her of her balance due of $25,777.35 with respect to 2005.

Thereafter, petitioner mailed the IRS a series of patently frivolous communications. On July 13, 2009, she mailed the IRS a "Registered Bonded Promissory Note" for $10 million. On July 31, 2009, she mailed the IRS a letter stating:

> I am in receipt of your notice of penalty and although you have charged me with frivolous tax returns, you have yet to identify what is incorrect in the filing of my taxes.

> You have provided me with IRS documentation that discusses frivolous tax return, however, you have not sent certified proof of your laws to prove your claim as it pertains to my tax return.

> Additionally, I have reviewed this information with my tax accountant and have been advised that you need to prove your claim. Please identify the information that is incorrect.

> Again, I am enclosing our copies of the original letter dated, 7/13/2009. Until you can you prove your claim, you are instructed to remove this penalty as soon as possible. I request a response of this documentation within 30 days.

On August 11, 2009, she mailed the IRS a second "Registered Bonded Promissory Note" for $10 million. On or about December 12 and 22, 2009, she mailed the IRS documents entitled "Administrative Affidavit of Specific Negative Averment, Opportunity to Cure and Counterclaim". On or about January 27, 2010, she

[*7] mailed the IRS a document entitled "First Notice of Fault and Demand for Payment", in which she demanded $24 million in damages plus interest, penalties, and fees. On or about February 3 and 11, 2010, she mailed the IRS documents entitled "Second Notice of Fault and Demand for Payment" and "Final Notice of Fault and Demand for Payment", respectively.

III.    Collection Due Process

On December 7, 2009, the IRS assessed the frivolous return penalties for 2006 and 2007. On December 21, 2009, the IRS assessed the frivolous return penalty for 2005. On April 5, 2010, the IRS mailed petitioner Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of levy), with respect to the frivolous return penalties for 2005, 2006, and 2007.[3] On April 16, 2010, the IRS received petitioner's timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request), with respect to the notice of levy. In the CDP hearing request she checked the box marked

---

[3] On August 17, 2009, the IRS mailed petitioner a notice of levy with respect to her 2005 Federal income tax liability (resulting from the erroneous refund). Petitioner requested and received a collection due process (CDP) hearing in which she challenged the 2005 liability. On January 19, 2010, respondent mailed petitioner a notice of determination sustaining the proposed levy. Petitioner did not file a petition with the Court for review of that determination.

**[\*8]** "other" and wrote "this debt is in the process of being setoff--paid in full. Please confirm and verify payment." She did not request any collection alternatives.

On May 25, 2010, the IRS mailed petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL), with respect to her Federal income tax liability for 2005 and the frivolous return penalties for 2005, 2006, and 2007. On June 11, 2010, the IRS received petitioner's timely filed CDP hearing request with respect to the NFTL. In the CDP hearing request she neither requested a collection alternative nor provided any explanation as to why she disagreed with the NFTL.

On August 11, 2010, petitioner mailed the IRS a letter stating that she was amending her Federal income tax returns for 2005, 2006, and 2007 to remove the fictitious interest and withholding. She stated in the letter:

> It is demanded that you release the Notice of levy/Civil Penalty that are attached. The release of the Civil Penalty is based on the IRS not responding to the validly [sic] of the 1099-OID as defined in Publication 1212 and the lack of tax administration as requested by me and never answered under Publication 1.

She enclosed with the letter a Form 1040X for 2005 and a Form 9465, Installment Agreement Request, proposing an installment agreement with a payment of $25

[*9] per month. The letter was signed by petitioner and her new C.P.A., Willie Hughes.

On October 27, 2010, Settlement Officer Maria N. Aguirre (SO Aguirre) of the IRS Office of Appeals (Appeals) mailed petitioner a letter scheduling a telephone CDP hearing for November 18, 2010. In the letter SO Aguirre explained to petitioner that her account transcripts indicated that she had an outstanding tax liability of $46,302. SO Aguirre further explained that if petitioner wanted Appeals to consider a collection alternative, she needed to file all missing tax returns and provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. SO Aguirre requested that petitioner call her for more information. On November 17, 2010, Mr. Hughes faxed SO Aguirre the first page of petitioner's letter dated August 11, 2010, along with another Form 9465 proposing an installment agreement with a payment of $25 per month and Forms 1040X for 2005, 2006, and 2007 removing the fictitious interest and withholding.

On November 18, 2010, SO Aguirre held the telephone CDP hearing with petitioner and Mr. Hughes. At the CDP hearing petitioner stated that the frivolous return penalties were assessed in error and requested that they be abated pursuant to section 6343, lack of tax administration, IRS Publication 1, Your Rights as a

[*10] Taxpayer, and IRS Publication 1212, Guide to Original Issue Discount (OID) Instruments. She also requested an installment agreement with a payment of $25 per month. SO Aguirre incorrectly determined that Appeals did not have jurisdiction to abate the frivolous return penalties. SO Aguirre further determined that petitioner (1) had not filed her 2009 Federal income tax return, (2) had failed to provide a completed Form 433-A, and (3) could afford to pay more than $25 per month. On December 27, 2010, Appeals mailed petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy and the NFTL. Petitioner filed a timely petition with this Court.

On February 27, 2012, the Court granted respondent's motion to remand the case to Appeals to consider petitioner's challenge to the frivolous return penalties. On April 26, 2012, Appeals Settlement Officer Kimberly Lewis (SO Lewis) held a supplemental CDP hearing with petitioner and Mr. Hughes. Petitioner raised two issues at the supplemental CDP hearing: (1) the frivolous return penalties were assessed before the date that she filed the amended tax returns; (2) within 30 days of the dates of the frivolous submission letters, she had mailed the IRS letters inquiring why the amended tax returns were considered frivolous. SO Lewis determined that petitioner had filed the amended tax returns in 2008 and that the

**[*11]** frivolous return penalties were not assessed until 2009. SO Lewis further determined that petitioner had failed to submit corrected returns to the IRS within 30 days as requested in the frivolous submission letters. SO Lewis examined the amended tax returns and concluded that the imposition of the frivolous return penalties was warranted. On May 9, 2012, Appeals mailed petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy and the NFTL.

OPINION

I.      Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for tax when a demand for payment of the tax has been made and the taxpayer fails to pay the tax. Section 6320(a) provides that the Secretary shall furnish the taxpayer with an NFTL within five business days after the notice of lien is filed.

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. See sec. 6671(a); see also Blaga v. Commissioner, T.C. Memo. 2010-170, slip op. at 11. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless

**[*12]** the Secretary has notified such person in writing of the right to a hearing before the levy is made.

If a taxpayer requests a hearing in response to an NFTL or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3). The hearing under section 6320 generally shall be conducted in a manner consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability, unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes a tax deficiency, additions to tax, and statutory interest, see Katz v. Commissioner, 115 T.C. 329, 339 (2000), and frivolous return penalties under section 6702, see Callahan v. Commissioner, 130 T.C. 44, 49 (2008).

Following a hearing Appeals must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy is appropriate. In making

[*13] that determination Appeals is required to take into consideration: (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed lien or levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review Appeals' determination in connection with a section 6330 hearing. Where the underlying tax liability is properly at issue, we review the taxpayer's liability de novo. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. Appeals abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has stated that "[a]buse of discretion occurs when a decision is based 'on an erroneous view of the law or a clearly erroneous assessment of the facts'", Fargo v.

**[\*14]** Commissioner, 447 F.3d 706, 709 (9th Cir. 2006) (quoting United States v. Morales, 108 F.3d 1031, 1035 (9th Cir. 1997)), aff'g T.C. Memo. 2004-13.

II.     Section 6702(a) Penalty

  A.     Background

As part of a comprehensive plan to combat the proliferation of abusive tax shelters, in 1982 Congress enacted three new assessable penalties, which were codified in sections 6700-6702; and section 6703, which sets forth rules applicable to those penalties.  See S. Rept. No. 97-494 (Vol. 1), at 266-267, 270-271, 275-279 (1982), 1982 U.S.C.C.A.N. 781, 1014-1026.  Section 6700 provides for the imposition of a penalty on any person who promotes an abusive tax shelter.  Section 6701 provides for the imposition of a penalty on any person who aids and abets another person in understating his or her tax liability.  Section 6702 provides for the imposition of a penalty on any person who files a document purporting to be a tax return that contains a frivolous position or was intended to delay or impede the administration of Federal income tax laws.

Section 6702, the penalty statute at issue here, remained largely unchanged until 2006.  See Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 407(a), 120 Stat. at 2960.  In 2006 Congress amended section 6702, increasing the penalty from $500 to $5,000 and broadening its reach to include

[*15] other types of frivolous tax submissions.  Id.; see also Alexander v.

Commissioner, T.C. Memo. 2012-75, slip op. at 6-7.  The amendment was

effective for submissions made and issues raised after the date the Secretary first

prescribed a list of frivolous positions pursuant to section 6702(c).  The Secretary

first prescribed a list of frivolous positions on March 16, 2007, in Notice 2007-30,

2007-1 C.B. 883.  Petitioner filed her amended tax returns on September 13, 2008.

Therefore, section 6702, as amended, applies in this case.  See also Callahan v.

Commissioner, 130 T.C. at 51 n.7.

B.     Application of Section 6702

Section 6702, as amended, provides as follows:

SEC. 6702.  FRIVOLOUS TAX SUBMISSIONS.

(a) Civil Penalty for Frivolous Tax Returns.--A person shall pay a penalty of $5,000 if--

(1) such person files what purports to be a return of a tax imposed by this title but which--

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect, and

(2) the conduct referred to in paragraph (1)--

(A) is based on a position which the Secretary has identified as frivolous under subsection (c), or

(B) reflects a desire to delay or impede the administration of Federal tax laws.

(b) Civil Penalty for Specified Frivolous Submissions.--

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) Listing of Frivolous Positions.--The Secretary shall prescribe (and periodically revise) a list of positions which the Secretary has identified as being frivolous for purposes of this subsection.  The Secretary shall not include in such list any position that the Secretary determines meets the requirement of section 6662(d)(2)(B)(ii)(II).

(d) Reduction of Penalty.--The Secretary may reduce the amount of any penalty imposed under this section if the Secretary determines that such reduction would promote compliance with and administration of the Federal tax laws.

(e) Penalties in Addition to Other Penalties.--The penalties imposed by this section shall be in addition to any other penalty provided by law.

The Commissioner bears the burden of proving that a taxpayer is liable for the section 6702 penalty.  Sec. 6703(a).  The deficiency procedures codified in subchapter B of chapter 63, i.e., sections 6211-6216, do not apply to the assessment or collection of the section 6702 penalty.  Sec. 6703(b).

**[*17]** C.    Petitioner's Liability for the Section 6702(a) Penalty

Respondent asserts that petitioner is liable for the frivolous return penalty under section 6702(a) for 2005, 2006, and 2007.  To satisfy his burden of proof with respect to the section 6702(a) penalty, respondent must establish three elements by a preponderance of the evidence:  (1) petitioner filed a document purporting to be a tax return, (2) the purported return lacked information on which the substantial correctness of the self-assessment may be judged or contained information that, on its face, indicates that the self-assessment was substantially incorrect, and (3) petitioner's conduct in filing the purported return was based on a position that the Secretary has identified as frivolous or reflected a desire to delay or impede the administration of Federal tax laws.  See secs. 6702(a), 6703(a); O'Brien v. Commissioner, T.C. Memo. 2012-326, at *13.  We address each of the elements in turn.

1.    First Element:  Purported Tax Return

Petitioner filed amended tax returns for 2005, 2006, and 2007 asserting claims for refund.  Section 6702 applies to all tax returns, including amended returns.  Colton v. Gibbs, 902 F.2d 1462, 1464 (9th Cir. 1990).  Thus, respondent has established the first element.

**[\*18]**     2.     <u>Second Element:  Substantially Incorrect Self-Assessment</u>

Petitioner's amended tax returns for 2005, 2006, and 2007 reported fictitious interest and withholding that, on the face of the returns, indicated that her self-assessment was substantially incorrect.  Petitioner reported fictitious taxable interest of $20,800, $16,500, and $21,100 and fictitious Federal income tax withholding in exactly the same amounts on her amended tax returns for 2005, 2006, and 2007, respectively.  She did not attach any documentation to substantiate the fictitious interest or withholding.  She provided only a cursory and implausible explanation that the changes were due to "additional infromation [sic] not previously available".  When the IRS mailed her a letter requesting verification of the changes, she submitted falsified OID forms purporting to be from legitimate financial institutions.  Petitioner neither received the fictitious interest that she reported nor was subject to the fictitious withholding.  Thus, respondent has established the second element.

     3.     <u>Third Element:  Desire To Delay or Impede Tax Administration</u>

As to the third element, respondent argues that petitioner's conduct reflected a desire to delay or impede the administration of Federal tax laws.[4]  Petitioner

---

[4] In Notice 2010-33, 2010-17 I.R.B. 609, 611 the IRS (acting for the Secretary) identified as frivolous positions that

(continued...)

[*19] avers that she had no such intention and argues that she acted on the advice of a professional (Ms. Marty) in good faith. We agree with respondent.

Petitioner testified at trial that she claimed refunds on her amended tax returns in order to pay off her credit card debt. She further testified that Ms. Marty came up with the idea of using the OID forms and that she did not question it. She admitted at trial that Ms. Marty's advice was "very confusing" and that she "just went along with what * * * [Ms. Marty] said." She did not receive any materials from Ms. Marty, nor did she ask for a second opinion.

_____

[4](...continued)
(21)   A taxpayer may use a Form 1099-OID, Original Issue Discount, (or another Form 1099 Series information return) as a financial or other instrument to obtain or redeem (under a theory of "redemption" or "commercial redemption") a monetary payment out of the United States Treasury or for a refund of tax, such as by drawing on a "straw man" or similar financial account maintained by the government in the taxpayer's name * * *

(22)   A taxpayer may claim on an income tax return or purported return an amount of withheld income tax or other tax that is obviously false because it exceeds the taxpayer's income as reported on the return or is disproportionately high in comparison with the income reported on the return or information on supporting documents filed with the return (such as Form 1099 Series, Form W-2, or Form 2439, Notice to Shareholder of Undistributed Long-Term Capital Gains).

However, Notice 2010-33, supra, is effective only for submissions made after April 7, 2010. Thus, it was not effective at the time petitioner filed her amended tax returns.

[*20] At the time she filed her amended tax returns, petitioner knew or had reason to know that Ms. Marty's advice was too good to be true and that she was not entitled to the refunds that she claimed. She reported taxable interest of $190, $227, and $115, and Federal income tax withholding of $15, zero, and zero, on her Federal income tax returns for 2005, 2006, and 2007, respectively. Yet on her amended tax returns she reported over $16,000 of fictitious interest and withholding for each year. She reported adjusted gross income (AGI) of $7,000 on her Federal income tax return for 2006 and negative AGI on her Federal income tax returns for 2005 and 2007. Yet on her amended tax returns she claimed refunds in excess of $14,000 for each year.

Petitioner did not express a genuine intention to correct her amended tax returns in her letters to the IRS dated February 10 and April 13, 2009. In those letters petitioner wrote that she had "not done anything wrong" and that Ms. Marty would "be taking care of answering your questions". Subsequently, petitioner mailed the IRS a series of patently frivolous communications, including two "Registered Bonded Promissory Note[s]" each for $10 million, two "Administrative Affidavit[s] of Specific Negative Averment, Opportunity to Cure and Counterclaim", and three "Notice[s] of Fault and Demand for Payment". See supra pp. 6-7.

[*21] We find that petitioner's conduct in filing her amended tax returns reflects a desire to delay or impede the administration of the Federal tax laws. Respondent has thus established the third element, and accordingly, he has met his burden in proving that petitioner is liable for the frivolous return penalty under section 6702(a) for 2005, 2006, and 2007.[5]

III.    Supplemental Notice of Determination

A taxpayer is entitled to a single hearing under sections 6320 and 6330 with respect to the taxable period to which the unpaid liability relates. Secs. 6320(b)(2), 6330(b)(2); Freije v. Commissioner, 131 T.C. 1, 5 (2008), aff'd, 325 Fed. Appx. 448 (7th Cir. 2009); Kelby v. Commissioner, 130 T.C. 79, 86 (2008). When this Court remands a case to Appeals, the hearing on remand is a supplement to the taxpayer's original hearing. Kelby v. Commissioner, 130 T.C. at 86; see also Olsen v. United States, 414 F.3d 144, 155 (1st Cir. 2005) ("In the event the administrative record is found inadequate for judicial review, 'the proper

---

[5] On brief it appears that petitioner abandoned her argument that the frivolous return penalties were assessed before the date that she filed her amended tax returns. See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) (noting that arguments not advanced on brief may be considered abandoned). In any event, that argument is erroneous in that she filed her amended tax returns on September 13, 2008, and the IRS assessed the frivolous return penalties for 2006 and 2007 on December 7, 2009, and the frivolous return penalty for 2005 on December 21, 2009.

**[\*22]** course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985))).  The hearing on remand provides the parties with the opportunity to complete the initial hearing while preserving the taxpayer's right to receive judicial review of the ultimate administrative determination.  Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010); Kelby v. Commissioner, 130 T.C. at 86.  A corollary to the fact that the taxpayer may receive only one hearing is that Appeals makes a single determination.  Kelby v. Commissioner, 130 T.C. at 86.  When this Court remands a case to Appeals and it comes back to us after a supplemental determination is issued, we review the supplemental determination.  Id.

Petitioner has not advanced any argument nor introduced any evidence that would allow us to conclude that Appeals' decision to sustain the NFTL and the proposed levy was based on an erroneous view of the law or a clearly erroneous assessment of the facts or that Appeals acted arbitrarily, capriciously, or without sound basis in fact or law.  At the supplemental CDP hearing petitioner did not raise any challenges to her income tax liability for 2005, nor would she have been

[*23] entitled to because she had disputed that liability at a prior CDP hearing.[6]

See sec. 301.6320-1(e)(3), A-E7, Proced. & Admin. Regs.; see also Bell v.

Commissioner, 126 T.C. 356, 358-359 (2006) (finding that a prior opportunity to

dispute the underlying tax liability includes a prior hearing pursuant to section

6330).

It was not an abuse of discretion to deny petitioner an installment agreement

or another collection alternative because she did not provide a completed Form

433-A and the accompanying financial documentation. See McLaine v.

Commissioner, 138 T.C. 228, 242-243 (2012); Orum v. Commissioner, 123 T.C.

1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005). Appeals determined that the

requirements of applicable law and administrative procedure were met and

concluded that sustaining the NFTL and the proposed levy action appropriately

balanced the need for efficient collection of taxes with petitioner's concerns

regarding the intrusiveness of the collection action.

Accordingly, we hold that respondent did not abuse his discretion in

sustaining the NFTL and the proposed levy. In reaching our holdings, we have

---

[6] Moreover, petitioner conceded at trial that she was not entitled to the refund she received for 2005 and that she owes the resulting tax for 2005.

**[*24]** considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.