T.C. Memo. 2017-192

UNITED STATES TAX COURT

VINCENT B. WHITAKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11288-16L.                    Filed September 27, 2017.

Vincent B. Whitaker, pro se.

Doreen Marie Susi, Trisha S. Farrow, and Rachael J. Zapeda, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  In this collection due process (CDP) case petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal Reve-

_____

[1]All statutory references are to the Internal Revenue Code in effect at all

(continued...)

[*2] nue Service (IRS or respondent) to uphold a notice of intent to levy. Petitioner challenges his liability for three frivolous return penalties that the IRS assessed under section 6702(a). Respondent has conceded that one of these penalties was assessed in error. We sustain the proposed collection action with respect to the other two.

## FINDINGS OF FACT

The parties submitted before trial a stipulation of facts with attached exhibits that is incorporated by this reference. Petitioner resided in Arizona when he petitioned this Court.

Petitioner was married to Mary Anne Valentine-Whitaker during 2012 and until her death in July 2015. During 2012 State Street Retiree Services (State Street), as manager of Ms. Valentine-Whitaker's retirement plan, distributed $15,469 to her. State Street reported this distribution to her and to the IRS on Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. This form reported a "[g]ross distribution" of $15,469 and a "[t]axable amount" of $15,469. It reported the distribution

---

[1](...continued)
relevant times. We round all monetary amounts to the nearest dollar.

[*3] in box 7 as a "normal distribution" and reported that Federal income tax of $3,094 had been withheld.

In early 2014 Ms. Valentine-Whitaker wrote letters to the IRS demanding that the $3,094 be refunded to her. She based this demand on the assertion that private sector retirement income is not subject to Federal income tax. The IRS replied that, if she had received a distribution from which tax was withheld, she had to file a return to claim a refund.

On June 13, 2014, petitioner and Ms. Valentine-Whitaker filed what purported to be a joint Federal income tax return for 2012 (June purported return) on Form 1040, U.S. Individual Income Tax Return. The June purported return showed zero on line 16a (as pension distributions), zero on line 16b (as the taxable amount of pension distributions), zero on line 37 (as adjusted gross income), and zero on line 43 (as taxable income). It showed $3,094 on line 62 as Federal income tax withheld and requested a refund of $3,094. This Form 1040 bore original signatures of Ms. Valentine-Whitaker and petitioner.

Petitioner and Ms. Valentine-Whitaker attached to the June purported return the Form 1099-R she had received from State Street, on which they wrote "Refuted Form 1099-R." They also attached what purported to be a "corrected" Form 1099-R from State Street. This document was not supplied by State Street but was

[*4] created by them.  It showed a "gross distribution" of zero, a "taxable amount" of zero, and "Federal income tax withheld" of zero.  The fictitious nature of this document was plain on its face:  While showing a "gross distribution" of zero, it reported in box 7 that it was a "normal distribution."

Enclosed with the June purported return was an "affidavit" of Ms. Valentine-Whitaker which was "made part of [the] corrected 1099-R."  In this document she asserted that she had never been a Federal "employee" as defined in section 3401(c) or received wages from an "employer" as defined in section 3401(d).  She further asserted that she was not a resident or citizen "of the federal District of Columbia or any federal state, enclave or territory."  Rather, she asserted that she was "a resident of Arizona, one of the NON-federal States."

Petitioner and Ms. Valentine-Whitaker also included with the June purported return a letter to the IRS dated June 10, 2014, signed by her.  This letter asserted that State Street "was not required to report my private-sector retirement payment on Form 1099-R but did anyway * * * and illegally withheld $3,094.00 in Federal Income Tax."  The letter included several paragraphs of legalese, evidently downloaded from a tax-protester website, that purported to justify their position.

On July 29, 2014, the IRS Service Center in Holtsville, New York, wrote Ms. Valentine-Whitaker that "we have no record of receiving your * * * [2012]

[*5] tax return." That statement was incorrect; the June purported return was stamped "received" by the Holtsville Service Center on June 13, 2014. The July 29 letter instructed Ms. Valentine-Whitaker as follows: "If you have filed, please send us a newly signed copy of your return. If you are married and filed a joint return, both husband and wife must sign."

On August 4, 2014, petitioner and Ms. Valentine-Whitaker submitted to the Holtsville Service Center, as they had been asked to do, a copy of the June purported return. This Form 1040 included attachments similar to those that accompanied the June purported return, plus additional attachments referencing the intervening correspondence.

On September 8, 2014, the IRS sent petitioner a CP72 notice informing him that he had "recently filed an unsubstantiated tax return claiming one or more frivolous positions" and instructing him to "file a corrected 2012 Form 1040 tax return within 30 days." This notice stated: "If you don't correct these errors immediately, we'll assess a $5,000 frivolous filing penalty against you. You can avoid this penalty if you file a corrected return within 30 days." The notice warned petitioner: "If you continue to submit documents claiming frivolous positions, we'll assess the $5,000 penalty each time you file a frivolous return."

**[*6]** On September 15, 2014, petitioner and Ms. Valentine-Whitaker filed what purported to be a correct Federal income tax return for 2012 (September purported return). The September purported return was signed by both petitioner and Ms. Valentine-Whitaker and was identical to the Form 1040 they had submitted in August, but with different attachments.

Petitioner and Ms. Valentine-Whitaker included with the September purported return a letter that they had both signed. They asserted in this letter that the IRS could not impose a frivolous return penalty upon them without first preparing a substitute for return (SFR) under section 6020. They accused the IRS of making "extortionate threats" and characterized the CP72 notice as a "deliberate fraudulent effort at witness-tampering and extortion." They averred that the Form 1040 "previously submitted and confirmed received by the IRS stands as accurate and valid."

In January 2015 the IRS assessed against petitioner and Ms. Valentine-Whitaker three frivolous return penalties in the aggregate amount of $15,000. The first penalty was assessed for the June purported return; the second was assessed for the copy of the June purported return that petitioners submitted in August; and the third was assessed for the September purported return. In an effort to collect this unpaid liability the IRS issued to Ms. Valentine-Whitaker in June 2015 a Final

[*7] Notice of Intent to Levy and Your Right to a Hearing. Two months later petitioner informed the IRS that she had died.

On November 12, 2015, the IRS issued petitioner a Final Notice of Intent to Levy and Your Right to a Hearing, and he timely requested a CDP hearing. He did not request a collection alternative; rather, he checked the box marked "Other" and attached a statement disputing his liability for the section 6702 penalties.

A settlement officer (SO) from the IRS Appeals Office held a telephone CDP hearing with petitioner on March 15, 2016. Petitioner contended that he was not liable for any penalty because his deceased wife's retirement income was not subject to Federal income tax. He did not seek or propose a collection alternative.

The SO verified that the penalties had been timely assessed and that all other requirements of law and administrative procedure had been satisfied.[2] She concluded that petitioner's actions in "submit[ting] tax returns and/or Form 1099's with zero income and claiming only withholding warranted penalty assessments

---

[2]Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. This provision does not apply to any "penalty automatically calculated through electronic means." Sec. 6751(b)(2)(A) and (B). It is unclear whether this exception applies to section 6702 penalties. See Lindberg v. Commissioner, T.C. Memo. 2010-67. In any event, the record includes copies of Forms 8278, Assessment and Abatement of Miscellaneous Civil Penalties, properly executed by an IRS supervisor, separately approving assessment of frivolous return penalties of $15,000 against petitioner and Ms. Valentine-Whitaker.

[*8] under IRC 6702(a)." On April 12, 2016, the IRS sent petitioner a notice of determination upholding the proposed levy, and he timely petitioned this Court.

OPINION

A.    Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the taxpayer has properly challenged his underlying tax liability for the year in question, we review the IRS determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). A taxpayer may challenge the existence or amount of his underlying liability in a CDP proceeding only "if the person did not receive any statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute * * * [it]." Sec. 6330(c)(2)(B).

Petitioner in his CDP hearing did not seek a collection alternative but challenged only his liability for the section 6702 penalties. These are assessable penalties that are not subject to deficiency procedures. Sec. 6703(b); see Callahan v. Commissioner, 130 T.C. 44, 50 (2008). Petitioner did not receive (and could not have received) a statutory notice of deficiency for this liability, and respondent agrees that petitioner has had no other opportunity to dispute it. He challenged the penalties during the CDP hearing, and the SO considered and rejected his

**[*9]** arguments.  We review this determination by the SO de novo.  Callahan, 130 T.C. at 50.

B.    Governing Statutory Framework

Section 6702(a) imposes a civil penalty of $5,000 upon a person who files a "frivolous tax return."  In any proceeding involving the issue of whether a person is liable for this penalty, "the burden of proof with respect to such issue shall be on the Secretary."  Sec. 6703(a); see Osband v. Commissioner, T.C. Memo. 2013-188, 106 T.C.M. (CCH) 124, 128.

The frivolous return penalty applies where three conditions are met.  First, the taxpayer must have filed a document that "purports to be a return of a tax imposed by" title 26.  Second, the purported return must be a document that either "does not contain information on which the substantial correctness of the self-assessment may be judged" or "contains information that on its face indicates that the self-assessment is substantially incorrect."  Sec. 6702(a)(1)(A) and (B).  Third, the taxpayer's conduct must either be "based on a position which the Secretary has identified as frivolous" or must "reflect[] a desire to delay or impede the administration of Federal tax laws."  Sec. 6702(a)(2)(A) and (B).  Congress directed the IRS to prescribe and periodically revise "a list of positions which the Secretary has identified as being frivolous for purposes of this subsection."  Sec. 6702(c).

**[\*10]** The courts generally look to the face of the document to determine whether a purported return is "frivolous." Grunsted v. Commissioner, 136 T.C. 455, 459 (2011); Callahan, 130 T.C. at 51; Yuen v. United States, 290 F. Supp. 2d 1220, 1224 (D. Nev. 2003). If a purported return reflects a position that the IRS has identified as "frivolous," the taxpayer's good-faith belief in the correctness of his position cannot serve as a defense to the section 6702 penalty. See Hudson v. United States, 766 F.2d 1288, 1291 (9th Cir. 1985); Alexander v. Commissioner, T.C. Memo. 2012-75, 103 T.C.M. (CCH) 1405, 1407; Lindberg v. Commissioner, T.C. Memo. 2010-67, 99 T.C.M. (CCH) 1273, 1278; Vaughn v. United States, 589 F. Supp. 1528, 1532 (W.D. La. 1984). If the taxpayer submits a Form 1040 in an effort to obtain a refund, the document necessarily "purports to be a return" for purposes of section 6702(a)(1). See Olson v. United States, 760 F.2d 1003, 1005 (9th Cir. 1985) (per curiam); Anderson v. United States, 754 F.2d 1270, 1272 (5th Cir. 1985) (per curiam).

If a taxpayer files multiple frivolous returns for a single year, the IRS can assess multiple frivolous return penalties. See Grunsted, 136 T.C. at 457, 460 (sustaining two penalties for 2002 and two penalties for 2003); Umoren v. Commissioner, T.C. Memo. 2012-117, 103 T.C.M. (CCH) 1645, 1647 (sustaining two penalties for 2006); Ganz v. United States, 1985 WL 3618, at \*4 (N.D. Ill. Oct.

**[*11]** 31, 1985). If a taxpayer files a frivolous return, he can be penalized even if he was not required to file a return or owes no tax for the year in question. Lister v. United States, 77 F. App'x 465, 466 (10th Cir. 2003); Bradley v. United States, 817 F.2d 1400, 1403 (9th Cir. 1987).[3]

C.    Analysis

The IRS originally assessed against petitioner three penalties under section 6702(a) for the 2012 taxable year. The second was assessed for the submission he made on August 4, 2014, in response to an IRS letter which stated (incorrectly) that it had "no record of receiving" the 2012 joint return. That letter asked petitioner to "please send us a newly signed copy of your return," and he complied with that request. Respondent in his post-trial brief "concedes that petitioner is not liable for the frivolous return penalty for the purported return submitted on August 4, 2014." We agree with respondent, however, that petitioner is liable for the other two assessed penalties. In the case of both the June purported return and

---

[3]Petitioner and Ms. Valentine-Whitaker apparently owed no tax for 2012 because their adjusted gross income of $15,469 was fully offset by the standard deduction and personal exemptions. (The IRS accordingly credited the $3,094 of tax withholding by State Street against petitioner's liability for the frivolous return penalties.) As stated in the text, however, a taxpayer who engages in conduct specified in section 6702(a) may be penalized even if he has no tax liability for the year at issue.

[*12] the September purported return, all three elements set forth in section 6702(a) for imposition of the penalty are satisfied.

First, the documents petitioner filed on June 13 and September 15 both "purport[ed] to be a return of a tax imposed by" title 26. Sec. 6702(a)(1). The June purported return was submitted on Form 1040, bore petitioner's and Ms. Valentine-Whitaker's original signatures, and was filed in an effort to obtain a refund. The September purported return was substantially similar to the June purported return, with original signatures but different attachments. It was filed in response to a CP72 notice that instructed petitioner to "[f]ile a corrected 2012 Form 1040 tax return within 30 days." It thus purported to be a corrected Form 1040 for 2012, and it was likewise filed in an effort to obtain a refund. Petitioner submitted this document after being warned by the IRS that, "[i]f you continue to submit documents claiming frivolous positions, we'll assess the $5,000 penalty each time you file a frivolous return."[4]

Second, both the June and the September purported returns "contain[] information that on its face indicates that the self-assessment is substantially incorrect."

[4]Where a taxpayer files a second frivolous return in response to an IRS notice that a previous return was frivolous, IRS personnel are instructed to assess a penalty for the originally filed return and also for any frivolous return filed in response to the notice. See Internal Revenue Manual pt. 4.10.12.5 (Sept. 5, 2014).

[*13] Sec. 6702(a)(1)(B). Each purported return shows zero on line 16a (as pension distributions), zero on line 16b (as the taxable amount of pension distributions), zero on line 37 (as adjusted gross income), and zero on line 43 (as taxable income). But each purported return inconsistently shows $3,094 on line 62 as "Federal income tax withheld from Forms W-2 and 1099."

The Forms 1099-R attached to the June purported return likewise show that "the self-assessment is substantially incorrect." The Form 1099-R supplied by State Street, on which petitioner or his wife wrote "Refuted 1099-R," showed a taxable pension distribution of $15,469. They based their self assessment on what purported to be a "corrected" Form 1099-R, but this document was created by them rather than supplied by State Street. It showed a "gross distribution" of zero but reported it as a "normal distribution," thus revealing on its face that it was fictitious. See Olson, 760 F.2d at 1005 (finding section 6702(a)(1)(A) satisfied where return is accompanied by self-generated forms that allegedly "correct" forms issued by third-party payors); Osband, 106 T.C.M. (CCH) at 128 (finding section 6702(a)(1)(B) satisfied where taxpayer "submitted falsified OID forms purporting to be from legitimate financial institutions").

[*14]  Third, petitioner's conduct was "based on a position which the Secretary has identified as frivolous."  Sec. 6702(a)(2)(A).  In fact, petitioner's conduct was based on at least three frivolous positions:

• Both the June and the September purported returns were "zero returns." The Secretary long ago identified as "frivolous" the position that a taxpayer can "elect to file a tax return reporting zero taxable income and zero tax liability even if * * * [he] received taxable income."  Rev. Rul. 2004-34, 2004-1 C.B. 619; Notice 2010-33, 2010-17 I.R.B. 609, 612; Notice 2007-30, 2007-1 C.B. 883.  The Courts have agreed that "zero returns" reflect frivolous positions.  Grunsted, 136 T.C. at 460; see also Olson, 760 F.2d at 1005; Alexander, 103 T.C.M. (CCH) at 1407.

• In the letter and "affidavit" included in the June purported return, petitioner and Ms. Valentine-Whitaker contended, as a basis for tax immunity, that she had never been a Federal "employee" as defined in section 3401(c) or received wages from an "employer" as defined in section 3401(d).  Petitioner and Ms. Valentine-Whitaker took the same position on the September purported return.  The Secretary has identified this position as "frivolous."  See Notice 2010-33, 2010-17 I.R.B. at 610.  The courts have uniformly agreed with the Secretary's  assessment. See, e.g., United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) (characteriz-

[*15] ing assertion that "employee" does not include privately employed wage earners as "a preposterous reading of the statute"); <u>Waltner v. Commissioner</u>, T.C. Memo. 2014-35, 107 T.C.M. (CCH) 1189, 1201.

• In the letter and "affidavit" included in the June purported return, petitioner and Ms. Valentine-Whitaker contended, as a basis for tax immunity, that she was not a resident or citizen "of the federal District of Columbia or any federal state, enclave or territory" but rather was "a resident of Arizona, one of the NON-federal States." Petitioner and Ms. Valentine-Whitaker took the same position on the September purported return. The Secretary has identified this position as "frivolous." <u>See</u> Notice 2010-33, 2010-17 I.R.B. at 609-610. The courts have uniformly agreed with the Secretary's assessment. <u>See</u> <u>In re Becraft</u>, 885 F.2d 547, 548 n.2 (9th Cir. 1989) (deeming assertions that Federal laws apply only to U.S. territories and the District of Columbia to have "no semblance of merit"); <u>Waltner</u>, 107 T.C.M. (CCH) at 1201 (characterizing as "nonsensical" the argument that a taxpayer is immune from Federal tax by virtue of being a citizen of a State but not of the United States).

D.   <u>Abuse of Discretion</u>

In deciding whether the SO abused her discretion in sustaining the proposed levy, we consider whether she: (1) properly verified that the requirements of ap-

**[\*16]** plicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more than intrusive that necessary." See sec. 6330(c)(3). We find that the SO properly verified that all requirements of applicable law and administrative procedure were followed. Petitioner raised no relevant issues (apart from his underlying tax liability), and he proposed no collection alternative.

To reflect the foregoing,

An appropriate decision will be entered.