T.C. Memo. 2019-10

UNITED STATES TAX COURT

PETER E. HENDRICKSON AND DOREEN M. HENDRICKSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6863-14.                    Filed February 11, 2019.

Peter E. Hendrickson and Doreen M. Hendrickson, pro sese.

<u>Robert D. Heitmeyer</u>, <u>Steven L. Williams</u>, and <u>Charles V. Dumas III</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  During the years at issue the Hendricksons were married
and received income from which taxes were withheld.  Mrs. Hendrickson also
received nonemployee compensation, and Mr. Hendrickson received payments
from Lost Horizons Corp. (Lost Horizons), a Michigan corporation of which he

[*2] was the sole shareholder.[1]  The Hendricksons did not report their income, filing "zero returns" and claiming refunds of the withheld taxes.  The Commissioner issued two notices of deficiency, one to the Hendricksons jointly for 2002 and 2003 and one to Mr. Hendrickson separately for 2004, 2005, and 2006.  The Hendricksons timely filed a petition while residing in Michigan.

The Hendricksons are tax protesters,[2] their returns were frivolous, and their positions in this litigation are also frivolous.  We addressed most of their arguments in Waltner v. Commissioner, T.C. Memo. 2014-35, aff'd, 659 F. App'x 440 (9th Cir. 2016), and we need not address them further.[3]

The issues we will address are:  (1) whether the statute of limitations on assessment bars collection of the Hendricksons' tax liabilities; (2) whether Mrs. Hendrickson's nonemployee compensation received in 2002 and 2003, Mr. Hendrickson's wages received in 2002 through 2006, and Mr. Hendrickson's

---

[1]Lost Horizons was a Michigan corporation incorporated on November 18, 1991, and dissolved on July 15, 2015.

[2]"Tax protesters" and "tax defiers" are "[p]ersons who make frivolous anti-tax arguments".  Wnuck v. Commissioner, 136 T.C. 498, 502 n.2 (2011).

[3]See Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.").

[*3] income received from Lost Horizons are taxable; (3) whether the

Hendricksons are liable for penalties under section 6663(a) or additions to tax

under section 6651(f) for taxable years 2002 and 2003, and whether Mr.

Hendrickson is separately liable for the same penalty and addition to tax for 2004;[4]

(4) whether Mr. Hendrickson is liable for additions to tax under section 6651(a)(2)

and (f) for taxable years 2005 and 2006; and (5) whether the Commissioner is

collaterally estopped from contesting the Hendricksons' tax liabilities because of

the Hendricksons' prior criminal conviction and subsequent payment of

restitution.

FINDINGS OF FACT

The Hendricksons are not strangers to judicial proceedings relating to their

Federal income tax. The issues before the Court stand in a long line of civil and

criminal proceedings relating to their Federal income tax. As is directly relevant

here, the Hendricksons have participated in civil and criminal proceedings that

relate to the years before the Court.

---

[4]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All monetary amounts are rounded to the nearest dollar.

**[\*4]** I.      The Hendricksons' 2002 and 2003 Returns

During 2002 and 2003 Mr. and Mrs. Hendrickson received income that was reported to the Internal Revenue Service (IRS). Mr. Hendrickson worked for Personnel Management, Inc. (Personnel Management), earning $58,965 and $60,608 for 2002 and 2003, respectively. Personnel Management filed and issued Forms W-2, Wage and Tax Statement, reporting tax withheld of $10,153 and $10,256, respectively. Mrs. Hendrickson received nonemployee compensation of $3,773 and $3,188 for 2002 and 2003, respectively. The payor created and filed Forms 1099-MISC, Miscellaneous Income, reporting these payments.

Mr. Hendrickson also received additional income in 2002 and 2003 from Lost Horizons. During those years Lost Horizons promoted his book, Cracking the Code: The Fascinating Truth About Taxation in America (2007). Bank records show that Lost Horizons issued checks to Mr. Hendrickson totaling $7,000 in 2002 and $6,514 in 2003.

The Hendricksons submitted a joint return for 2002. They reported zero wages and $20 in taxable interest, which resulted in no tax liability and a refund of $10,153. Mr. Hendrickson did not submit the Form W-2 issued to him by Personnel Management and instead submitted Form 4852, Substitute for Form

[*5] W-2,[5] zeroing out the wages reported by Personnel Management. The 2002 substitute W-2 states that Mr. Hendrickson determined his wages and withholdings using "[c]ompany provided records and the statutory language behind IRC sections 3401 and 3121 and others." In explaining his efforts to obtain a corrected Form W-2 Mr. Hendrickson states that he "[r]equest[ed], but the company refuses to issue forms correctly listing payments of 'wages as defined in 3401(a) and 3121(a)' for fear of IRS retaliation. The amounts listed as withheld on the W-2 it submitted are correct, however." The Hendricksons did not report any earnings from Lost Horizons.

The Hendricksons also attached to their return a Form 1099-MISC disputing Mrs. Hendrickson's nonemployee compensation. The Form 1099-MISC was marked "corrected" and at the bottom of the form included the following statement signed by Mrs. Hendrickson:

> This corrected Form 1099-MISC is submitted to rebut a document known to have been submitted by the party identified above as 'PAYER' which erroneously alleges a payment to the party identified above as the 'RECIPIENT' of "gains, profit or income" made in the course of a "trade or business". Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

---

[5]The complete title of this form is Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

[*6] This use of a zero return, zeroing out wages and compensation and reporting zero tax liability, has been repeatedly characterized as frivolous.[6]

The Hendricksons submitted a joint return for 2003. The Hendricksons return reported zero wages, $3 in taxable interest, and an IRA distribution of $283 that resulted in zero tax liability and a refund of $10,228. The Hendricksons maintained the same frivolous reporting positions as used on their 2002 return. In a nearly identical manner they submitted Form 4852 disputing Mr. Hendrickson's wages from Personnel Management and a "corrected" Form 1099-MISC disputing Mrs. Hendrickson's nonemployee compensation. The Hendricksons did not include any earnings from Lost Horizons.

II.     Mr. Hendrickson's 2004, 2005, and 2006 Returns

Mr. Hendrickson submitted separate returns for 2004, 2005, and 2006. During 2004, 2005, and 2006 Mr. Hendrickson worked for Personnel Management earning $62,433, $64,310, and $20,494, respectively. For 2004, 2005, and 2006

---

[6]See, e.g., Grunsted v. Commissioner, 136 T.C. 455, 460 (2011); Jagos v. Commissioner, T.C. Memo. 2017-202, aff'd, 121 A.F.T.R.2d (RIA) 2018-2209 (6th Cir. 2018); Waltner v. Commissioner, T.C. Memo. 2014-35, aff'd, 659 F. App'x 440 (9th Cir. 2016); Blaga v. Commissioner, T.C. Memo. 2010-170, 100 T.C.M. (CCH) 91, 94 (2010); Ulloa v. Commissioner, T.C. Memo. 2010-68; Hill v. Commissioner, T.C. Memo. 2003-144; Rayner v. Commissioner, T.C. Memo. 2002-30, aff'd, 70 F. App'x 739 (5th Cir. 2003).

**[\*7]** Personnel Management filed and issued Forms W-2 reporting tax withheld of $10,484, $10,838, and $3,635, respectively.

Mr. Hendrickson continued using Form 4852 to dispute his wages and withholding from Personnel Management and submitted zero returns for 2004, 2005, and 2006. This frivolous reporting position resulted in zero tax liability for each of these three years.

The Commissioner processed Mr. Hendrickson's 2004 return but rejected his 2005 and 2006 returns. Substitutes for returns were prepared for 2005 and 2006 under section 6020(b). The 2005 and 2006 substitutes for returns used single filing status, included income reported from Mr. Hendrickson's employment with Personnel Management, applied the standard deduction, and allowed for one exemption. On those returns the Commissioner calculated increased tax liabilities and imposed additions to tax under section 6651(a)(2) and (f). Mr. Hendrickson did not pay any of the tax calculated on the 2005 and 2006 substitutes for returns.

III. Civil Refund Proceeding

In April 2006 the United States filed a civil complaint for erroneous tax refunds for 2002 and 2003 and sought a permanent injunction against the Hendricksons. The complaint sought to recover the Hendricksons' refunds issued

[*8] "as a result of the misrepresentations * * * [the Hendricksons] made on their 2002 and 2003 Form 1040 tax returns and to enjoin defendants under IRC § 7402 from filing a false and fraudulent tax returns and forms with the Internal Revenue Service." The complaint further states that Mr. Hendrickson's "bogus zero-income scheme fraudulently asserts that the payment of federal taxes is voluntary, and that his customers are legally entitled to refunds of all taxes withheld from their paychecks."[7]

In May 2007 the U.S. District Court for the Eastern District of Michigan issued an amended judgment and order of permanent injunction. The judgment required that the Hendricksons return their erroneous refunds received from their 2002 and 2003 returns under section 7405(b) and ordered a permanent injunction "prohibit[ing] * * * [the Hendricksons] from filing any tax return, amended return, form * * * or other writing or paper with the IRS that is based on the false and frivolous claims set forth in Cracking the Code that only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their

---

[7]Complaint, United States v. Hendrickson, No. 06-11753 (E.D. Mich. Apr. 12, 2006). The complaint highlights Mr. Hendrickson's book, Cracking the Code, and his use of www.losthorizons.com to promote his book and the frivolous positions expressed therein.

[*9] wages".[8]  The Hendricksons appealed to the U.S. Court of Appeals for the Sixth Circuit, and the judgment was affirmed.

IV.    Criminal Proceeding

Mr. Hendrickson was indicted on 10 counts of filing a false document under section 7206(1) in November 2008:  6 counts relating to the use of Form 4852 in place of Forms W-2 for tax years 2000 and 2002 through 2006, and 4 counts relating to Forms 1040, U.S. Individual Income Tax Return, for tax years 2000 and 2002 through 2004.[9]  During his criminal proceeding Mr. Hendrickson argued the same frivolous positions discussed in Cracking the Code.

A jury found Mr. Hendrickson guilty on all 10 counts, and a criminal judgment was entered against him in April 2010.  The judgment included imprisonment, fines, and restitution.  The Hendricksons' restitution amount was calculated to "include the tax due and owing by the defendant for 2002 through 2006 ($11,960) as well as the fraudulent refund that the defendant obtained by filing a false return for 2003 ($3,712)", totaling $15,672.  The Hendricksons have fully paid the restitution amount.  Mr. Hendrickson's conviction was affirmed by

---

[8]Amended Judgment and Order of Permanent Injunction at 7-8, United States v. Hendrickson, No. 06-11753 (E.D. Mich. May 2, 2007).

[9]Indictment, United States v. Hendrickson, No. 08-20585 (E.D. Mich. Nov. 12, 2008).

**[*10]** the U.S. Court of Appeals for the Sixth Circuit, and his petition for certiorari was denied.[10]

## V.     Current Deficiency Proceeding

The Commissioner issued two notices of deficiency on December 13, 2013. The first determined the following deficiencies and penalties with respect to Mr. and Mrs. Hendrickson's Federal income tax for years 2002 and 2003:

| Year | Deficiency | Penalty sec. 6663(a) |
|------|-----------|----------------------|
| 2002 | $9,348    | $10,394              |
| 2003 | 7,997     | 9,452                |

The notice states that should section 6663(a) not apply, in the alternative section 6651(f) should apply to impose an addition to tax for fraudulent failure to file for each year.

The second notice determined the following deficiencies, penalties, and additions to tax with respect to Mr. Hendrickson's Federal income tax for years 2004, 2005, and 2006:

---

[10]See United States v. Hendrickson, 460 F. App'x 516, 517 (6th Cir. 2012), cert. denied, 567 U.S. 906 (2012).

[*11]
                                                              Additions to tax

| Year | Deficiency | Penalty sec. 6663(a) | Sec. 6651(a)(2) | Sec. 6651(f) |
|------|-----------|----------------------|------------------|--------------|
| 2004 | $10,369 | $7,777 | --- | --- |
| 2005 | 10,696 | --- | $2,674 | $7,755 |
| 2006 | 1,426 | --- | 357 | 1,034 |

The Hendricksons filed a single petition arguing that "[n]o underpayment of Petitioners' Federal income tax liabilities exists for the years 2002 through 2006" and that "Petitioners were not negligent, nor did Petitioners knowingly or negligently disregard any rules or regulations governing the preparation of tax returns for the years 2002 through 2006 * * * and did not intentionally disregard any tax rules or regulations". They also dispute all adjustments and calculations for each of the years at issue, arguing that the Commissioner erred in determining their deficiencies in Federal income tax, penalties under section 6663, and additions to tax under section 6651(f). The Hendricksons further claim that the payment of restitution was in full "satisfaction of the alleged tax debt" and that "Respondent knowingly waived any rights he may have had, after the fact of payment, to seek anew [sic] assessment and collection of that alleged debt through respondent's deficiency procedures, or in any other way." The Hendricksons also claim that the Commissioner is barred from litigating this matter under the

[*12] doctrines of res judicata and collateral estoppel, that the Commissioner's acceptance of restitution waives all future claims, that the period of limitations for assessment and collection has passed, and that the Commissioner's notice of deficiency "fails to set forth accurate numerical information", is "arbitrary, capricious, ambiguous, unclear, indefinite, uncertain and/or illogical", and "fails to state a claim on which relief can be granted".

This case was tried in March 2017. The following December, we issued our Opinion in Graev v. Commissioner (Graev III), 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). On December 21, 2017, we ordered the parties to address the effect of Graev III on this case. The parties responded, and the Commissioner moved to reopen the record to submit evidence of section 6751(b) supervisory approval. The Court granted the Commissioner's motion, over the Hendricksons' objection, and further trial was held.

At trial the Court admitted into evidence documents that the Commissioner relies on for section 6751(b) supervisory approval of penalties. These documents include a Form 11661, Fraud Development Recommendation - Examination, and a civil fraud lead sheet. Form 11661 lists Mr. Hendrickson's name, includes the revenue agent's notes asserting fraud penalties for 2002 and 2003, is dated August

**[\*13]** 2012, and is signed by the revenue agent's immediate supervisor. The civil fraud lead sheet lists both Mr. and Mrs. Hendrickson, asserts fraud penalties for 2002 and 2003, is undated, and includes a detailed description of the Hendricksons' frivolous filing techniques.

The Hendricksons argue that the Commissioner's evidence of supervisory approval was not actually intended to meet the requirements of section 6751 and that its purpose is to provide "a framework for making potential fraud determinations, not an actual fraud determination". They contend that Form 11661 and the civil fraud lead sheet do not meet the Commissioner's own requirements and fail to "identify or document any potential fraud indicators." The Hendricksons further argue that section 6751(b) approval is required for additions to tax under section 6651(a)(2) and (f) because Congress intended section 6751(b) to apply to all penalties not automatically calculated through electronic means.

The Commissioner's position is that section 6751(b)(1) "requires only approval, in writing, by the immediate supervisor of the individual who made the initial determination." He argues that the Form 11661 and the civil fraud lead sheet show that a penalty was determined by a revenue agent in writing and that the determination was approved by the revenue agent's supervisor. The

**[*14]** Commissioner further argues that approval of section 6651 additions to tax is specifically excluded under section 6751(b)(2).

OPINION

The Hendricksons' tax-protester arguments have burdened the judicial system and the IRS for nearly three decades. Their use of substitute Forms W-2 and "corrected" Forms 1099-MISC, as discussed in Cracking the Code and used by taxpayers such as those in Waltner, have been repeatedly rejected by the Court.[11] But the Hendricksons also raise an argument not addressed in Waltner. The main premise of this argument is that the Commissioner has no proof that the Hendricksons engaged in any taxable activities and the Commissioner's reliance on Forms W-2 and 1099-MISC is hearsay.[12] The Hendricksons incorrectly argue that this shifts the burden to the Commissioner. But this frivolous argument is not

---

[11]See, e.g., Grunsted v. Commissioner, 136 T.C. 455; Jagos v. Commissioner, T.C. Memo. 2017-202; Waltner v. Commissioner, T.C. Memo. 2014-35; Mooney v. Commissioner, T.C. Memo. 2011-35; Blaga v. Commissioner, T.C. Memo. 2010-170; Ulloa v. Commissioner, T.C. Memo. 2010-68; Hill v. Commissioner, T.C. Memo. 2003-144; Rayner v. Commissioner, T.C. Memo. 2002-30.

[12]Cracking the Code, supra, at 163-184 ("About 1040's, And Claiming Refunds" describes the Hendricksons' strategy to claim a full refund by submitting "corrected" Forms 1099-MISC with a declaration that income received was not taxable and substitute Forms W-2 zeroing out reported wages.).

**[\*15]** new to the Court, and we will not waste judicial resources addressing it further.[13] The Hendricksons' frivolous arguments will be addressed by the Court where we can dispense with them in a quick and efficient manner. Otherwise they will be ignored.[14]

## I. Statute of Limitations

Generally the period of limitations for the assessment of tax liabilities is three years, except in instances of fraud, a willful attempt to evade tax, and the taxpayers' failure to file a return.[15] Under such exceptions the Commissioner may assess an increased tax liability at any time.[16]

For instances of fraud the Commissioner bears the burden of proving an exception to the general limitations period.[17] Likewise, the Commissioner has the burden of proof with respect to fraud determinations for the penalty under section

---

[13]See Crain v. Commissioner, 737 F.2d at 1417; Wnuck v. Commissioner, 136 T.C. at 499 (explaining why we do not address frivolous arguments).

[14]See Wnuck v. Commissioner, 136 T.C. at 499.

[15]Sec. 6501(a), (c).

[16]Sec. 6501(c)(1), (2), and (3).

[17]See sec. 7454(a); Gould v. Commissioner, 139 T.C. 418, 431 (2012), aff'd, 552 F. App'x 250 (4th Cir. 2014); Harlan v. Commissioner, 116 T.C. 31, 39 (2001).

**[*16]** 6663(a) or an addition to tax under section 6651(f).[18]  Fraud must be shown

by clear and convincing evidence.[19]  Fraudulent intent is a question of fact

determined after careful review of the entire record, of the taxpayer's entire course

of conduct, and of circumstantial evidence reasonably inferred from the facts.[20]  A

conviction "under section 7206(1) for intentionally filing false returns * * * does

not in and of itself prove that section 6501(c) applies because the intent to evade

tax is not an element of the crime charged under section 7206(1); however, * * *

[a conviction] under section 7206(1) may be considered in connection with other

facts in determining * * * fraud."[21]

The Hendricksons' tax-protester positions, civil refund proceeding, and

criminal convictions under section 7206(1) show a clear fraudulent and willful

---

[18]See sec. 7454(a).

[19]Rule 142(b); see sec. 7454(a); Gould v. Commissioner, 139 T.C. at 431; O'Neal v. Commissioner, T.C. Memo. 2016-49, at *27.

[20]Spies v. United States, 317 U.S. 492, 499 (1943); Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

[21]O'Neal v. Commissioner, at *27 (citing Wright v. Commissioner, 84 T.C. 636, 643-644 (1985)).

**[*17]** intent to evade tax. Because of this clear intent the Hendricksons' period of limitations for assessment remains open for 2002 through 2006.[22]

## II.     Receipt of Income Under Section 61

Under section 61(a) "gross income means all income from whatever source derived". That includes Mr. Hendrickson's wages from Personnel Management and income from Lost Horizons received in 2002 through 2006, and Mrs. Hendrickson's nonemployee compensation received in 2002 and 2003. The Commissioner's separate notices account for the income, wages, and nonemployee compensation that were reported to the Commissioner on information returns and discovered through the examination of bank records.

In general the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving those determinations incorrect.[23] But the Hendricksons' deficiencies involve unreported income. In the Sixth Circuit, the circuit in which appeal in this case would normally lie, a deficiency involving unreported income is not entitled to the presumption of correctness unless the Commissioner can provide a "minimal" factual predicate or foundation of substantive evidence linking the taxpayer to the income-producing

---

[22]See sec. 6501(c).

[23]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[*18] activity.[24] If the Commissioner produces evidence linking the Hendricksons to an income-producing activity, then the burden remains with the Hendricksons to rebut the presumption.[25]

To satisfy this minimal factual burden the Commissioner introduced into evidence Forms W-2 issued to Mr. Hendrickson by Personnel Management and original Forms 1099-MISC to rebut Mrs. Hendrickson's "corrected" Forms 1099-MISC. The parties' stipulations also establish the requisite evidentiary foundation with respect to Mr. Hendrickson's wages and Mrs. Hendrickson's nonemployee compensation.

Regarding Mr. Hendrickson's receipt of income from Lost Horizons, the Commissioner's notice asserts that Lost Horizons issued checks to Mr. Hendrickson in 2002 and 2003. Mr. Hendrickson stipulated that he was the sole shareholder of Lost Horizons for 2002 and 2003, and the record indicates that Lost Horizons was in the business of promoting Mr. Hendrickson's book. The

---

[24]United States v. Walton, 909 F.2d 915, 918-919 (6th Cir. 1990) (citing Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977)); Richardson v. Commissioner, T.C. Memo. 2006-69, 91 T.C.M. (CCH) 981, 989 (2006), aff'd, 509 F.3d 736 (6th Cir. 2007).

[25]Richardson v. Commissioner, 91 T.C.M. (CCH) at 989.

**[*19]** Commissioner linked the Hendricksons to an income-producing activity, and the burden of showing error lies with them.

The Hendricksons failed to advance any credible arguments or offer any credible evidence showing that the nonemployee compensation, wages, and payments they received are not taxable income. The general premise of the Hendricksons' arguments is that information returns filed by employers cannot be relied upon by the Commissioner, are hearsay, "and do not fall under the 'business records' exception to * * * [rule 802 of the Federal Rules of Evidence] as to their allegations that any payments made to Petitioners constituted or were connected with taxable events."

The Hendricksons' position is frivolous.[26] The Hendricksons continue to offer only "tax protester" or "tax defier" arguments and nothing else. Consequently, we will not address them. The Hendricksons received taxable income in 2002 and 2003, and Mr. Hendrickson received taxable income in 2004, 2005, and 2006.

---

[26]A frivolous argument is one that is "contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986).

[*20] III.    Filing Status

The returns submitted by the Hendricksons did not consistently show the same filing status.  The Hendricksons submitted returns for 2002 and 2003 electing joint filing status.  Mr. Hendrickson submitted a separate return for 2004, electing married filing separately.  For 2005 it is unclear what filing status Mr. Hendrickson purported to elect, but the return did not include Mrs. Hendrickson's name at the top of the return or her signature at the bottom.  For 2006 Mr. Hendrickson submitted a return that purported to elect joint filing status, but that return listed Mrs. Hendrickson on the line used to identify a spouse who filed a separate return, and the return did not include Mrs. Hendrickson's name at the top of the return or her signature at the bottom.  These various ambiguities were all resolved by stipulation; the parties stipulated that the 2004 through 2006 returns were submitted as married filing separately.

In his notices of deficiency the Commissioner determined various filing statuses.  For 2002 and 2003 the Commissioner determined the Hendricksons' filing status to be married filing jointly.  For 2004 the Commissioner determined Mr. Hendrickson's filing status to be married filing separately.  And for 2005 and 2006 the Commissioner determined Mr. Hendrickson's filing status to be single.

**[\*21]** For 2005 and 2006 the Commissioner erred in determining Mr. Hendrickson's filing status to be single. The parties stipulated that the Hendricksons "were married at all times during the years in question." A married person is ineligible for single filing status.[27]

IV.    Mr. and Mrs. Hendrickson's Penalties for 2002, 2003, and 2004

The Commissioner determined section 6663(a) fraud penalties for the Hendricksons for 2002 and 2003, and for Mr. Hendrickson separately for 2004. In the 2002 and 2003 notice of deficiency the Commissioner determined that should section 6663(a) not apply, in the alternative section 6651(f) should impose additions to tax for fraudulent failure to file. The Commissioner further asserts in his answer that should the Court not find fraud under section 6663(a), the Court should find fraudulent failure to file under section 6651(f) for the Hendricksons' 2002 and 2003 returns and Mr. Hendrickson's 2004 return.

The section 6663(a) fraud penalty and the addition to tax under section 6651(f) for fraudulent failure to file are similar. In Mohamed v. Commissioner, T.C. Memo. 2013-255, the Court provides a lengthy comparison of the two

_____

[27]Sec. 1(c); see also Donigan v. Commissioner, 68 T.C. 632 (1977) (holding that the taxpayer, who was married at the relevant time, was not eligible for the filing status of single).

**[*22]** penalties.[28]  As relevant here, imposition of a section 6663(a) penalty

requires that the taxpayer file a valid return, and a section 6651(f) addition to tax

is applicable "<u>only</u> if * * * [the taxpayer] fails to file a timely return, and then only

if the delinquency is fraudulent."[29]  Although the Hendricksons, and Mr.

Hendrickson separately, submitted documents purporting to be returns for 2002,

2003, and 2004, we must determine whether the returns are valid for the purpose

of imposing a section 6663(a) penalty or a section 6651(f) addition to tax.

It is generally accepted that a taxpayer's return reporting zeros for all

income lines is not a valid return.[30]  Additionally, even if the taxpayer provides

some income information, the return is not valid as "there must also be an honest

and reasonable intent to supply the information required by the tax code . . . .  In

our self-reporting tax system the government should not be forced to accept as a

return a document which plainly is not intended to give the required

---

[28]<u>Mohamed v. Commissioner</u>, T.C. Memo. 2013-255, at *14-*25.

[29]<u>Mohamed v. Commissioner</u>, at *19-*20.

[30]<u>See, e.g.</u>, <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 169 (2003) (taxpayer reported zeros for all income lines), <u>aff'd without published opinion</u>, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004); <u>Caton v. Commissioner</u>, T.C. Memo. 2012-92, 103 T.C.M. (CCH) 1488, 1489 (2012) (taxpayer reported zero for wages, total income, adjusted gross income, taxable income, and total tax).

[*23] information."[31]  Finally the Commissioner's processing of an invalid return does not make it valid.[32]  As the Court has similarly held regarding the open limitations period with which to assess liabilities under section 6501(c), the Commissioner's processing of a fraudulent return does not in and of itself start the limitations period.[33]

The Hendricksons' returns for 2002 and 2003 and Mr. Hendrickson's separate return for 2004 are not valid returns.  The 2002, 2003, and 2004 returns are not complete zero returns; they conveniently report either a minuscule amount of taxable interest or IRA distributions.  But we nonetheless hold that the returns for 2002, 2003, and 2004 do not show an "honest and reasonable intent to supply information required by the tax code" and are the result of the Hendricksons' frivolous attempt in protesting the Federal income tax.  Because the Hendricksons'

---

[31]United States v. Mosel, 738 F.2d 157, 158 (6th Cir. 1984) (quoting United States v. Moore, 627 F.2d 830, 835 (7th Cir. 1980)); see Beard v. Commissioner, 82 T.C. 766, 774-779 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986).

[32]See Beard v. Commissioner, 82 T.C. at 777 (holding return was invalid when taxpayer made alterations to Form 1040 that allowed taxpayer to claim a refund); Mohamed v. Commissioner, at *12 (finding taxpayer's unsigned return was invalid although processed by the IRS); see, e.g., Olpin v. Commissioner, 270 F.3d 1297, 1301 (10th Cir. 2001) (holding that "acceptance cannot cure an invalid return" when the taxpayer failed to sign the return), aff'g T.C. Memo. 1999-426.

[33]See Feller v. Commissioner, 135 T.C. 497, 502 (2010).

[*24] returns for 2002 and 2003 and Mr. Hendrickson's return for 2004 are not valid returns, we cannot uphold section 6663(a) penalties.

However, section 6651(f) provides an increased addition to tax of 75% of the amount required to be shown as tax on an unfiled return if the failure to file the return is fraudulent. The Hendricksons' 2002 and 2003 returns and Mr. Hendrickson's 2004 return are not valid because of their fraudulent and willful intent to evade tax. Because their invalid returns are not due to reasonable cause, we uphold the Commissioner's section 6651(f) additions to tax for 2002, 2003, and 2004.

V.    Mr. Hendrickson's Additions to Tax for 2005 and 2006

A.    Section 6651(a)(2) Failure To Pay

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown on a return unless the taxpayer shows that the failure was due to reasonable cause and not due to willful neglect. In instances where the taxpayer fails to file a return and a return is prepared by the Secretary under section 6020(b), commonly known as a substitute for return, the substitute for return is treated as the return filed by the taxpayer for purposes of determining an addition

[*25] to tax for failure to timely pay.[34]  The Commissioner introduced into evidence the substitutes for returns prepared by the Secretary for Mr. Hendrickson's 2005 and 2006 returns, which satisfy the requirements of section 6020(b).  Therefore, the Commissioner has met his burden, and the burden shifts to Mr. Hendrickson.  Mr. Hendrickson failed to raise any credible defense at trial or on brief, arguing only frivolous positions that the Court will not waste its time addressing.  Accordingly, Mr. Hendrickson is liable for additions to tax under section 6651(a)(2).

B.     Section 6651(f) Fraudulent Failure To File

Mr. Hendrickson's 2005 and 2006 returns were rejected by the Commissioner because of fraud, and substitutes for returns were prepared under section 6020(b).  Mr. Hendrickson's rejected 2005 and 2006 returns used the same frivolous reporting positions as his prior returns, and his reporting was not due to reasonable cause.  Mr. Hendrickson's pattern of filing frivolous returns shows a deliberate intent to conceal taxable income, and he is liable for additions to tax under section 6651(f).

---

[34]Sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

**[\*26]** VI.    Section 6751(b) Supervisory Approval

The Hendricksons are jointly liable for additions to tax under section 6651(f) for 2002 and 2003, and Mr. Hendrickson is separately liable for additions to tax under section 6651(a)(2) for 2005 and 2006 and section 6651(f) for 2004, 2005, and 2006.  They argue that section 6751(b) requires supervisory approval of additions to tax under section 6651(a) and (f) because these additions to tax are not automatically calculated through electronic means.  Their position is that section 6751(b)(2) is ambiguous and that the rule of lenity requires us to resolve any ambiguity in their favor.  We disagree.

Section 6751(b)(2)(A) explicitly provides that the requirement of an approval of assessment shall not apply to "any addition to tax under section 6651".  Therefore the Commissioner was not required to provide written approval of section 6651(a) and (f) additions to tax.[35]

VII.    Collateral Estoppel, Res Judicata, and Restitution Payments

The Hendricksons argue that the Commissioner's claims "are res judicata and collaterally estopped" and that the Commissioner's acceptance of restitution waives all future claims.  We disagree.

---

[35]Beam v. Commissioner, T.C. Memo. 2017-200, at \*14 ("Section 6751(b) by its terms does not apply to 'any addition to tax under section 6651, 6654, or 6655.'" (quoting sec. 6751(b)(2)(A))).

**[\*27]** Res judicata, generally, prevents parties from relitigating the same cause of action and "applies to a claim if it was, or could have been, litigated as part of the cause of action in a prior case."[36] Collateral estoppel, or issue preclusion, "provides that once an issue of fact or law is 'actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'"[37] A prior court's factual determinations are preclusive if the court had jurisdiction to, and did, determine the facts at issue and the disputed issue was necessary to the outcome of the prior decision.[38]

Mr. Hendrickson was found guilty under section 7206(1) of filing a false document. The Commissioner's determinations regarding the Hendricksons' tax liabilities, or the amounts, were not a necessary element of the criminal conviction. Rather, Mr. Hendrickson was charged for willfully filing a false document that excluded income he knowingly received, a crime that does not require as an

---

[36]Morse v. Commissioner, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 676-677 (2003) (citing Commissioner v. Sunnen, 333 U.S. 591, 597-598 (1948)), aff'd, 419 F.3d 829 (8th Cir. 2005); see Trost v. Commissioner, 95 T.C. 560, 566 (1990).

[37]Morse v. Commissioner, 86 T.C.M. (CCH) at 677 (quoting Montana v. United States, 440 U.S. 147, 153 (1979)).

[38]See Meier v. Commissioner, 91 T.C. 273, 282-287 (1988).

[*28] element the determination of Federal income tax liabilities.[39] Because the criminal proceeding involved a different cause of action and did not require a calculation of liabilities as a necessary element of the conviction, res judicta and collateral estoppel do not apply.

The Hendricksons further contend that the restitution ordered in Mr. Hendrickson's criminal conviction is "the total due from Petitioners as tax liabilities for all the years involved in the case now before the Court" and that the amount of restitution "was fully briefed and argued by both sides in a protracted litigation over the course of a month." The Hendricksons also argue that their payments of restitution and the Commissioner's acceptance waive the Commissioner's right to future litigation. Again we disagree. The District Court did not adjudicate the Hendricksons' joint tax liabilities or Mr. Hendrickson's separate tax liabilities. Rather the court based the restitution amount on an estimate of the Hendricksons' civil tax liabilities, an estimate that is not determinative of any potential future tax liability.[40] It is well established that a District Court's ordering, or deciding not to order, restitution has no effect on the

---

[39]M.J. Wood Assocs., Inc. v. Commissioner, T.C. Memo. 1998-375, 76 T.C.M. (CCH) 700, 702 (1998).

[40]See Morse v. Commissioner, 419 F.3d at 833-835; Durland v. Commissioner, T.C. Memo. 2016-133, at *54-*56.

**[\*29]** Commissioner's authority to assess the taxpayer's liability.[41]  Consequently, the Hendricksons' payment of restitution does not preclude the Commissioner from pursuing the Hendricksons' Federal income tax deficiencies.

## Conclusion

The Hendricksons received taxable income in 2002 and 2003, and Mr. Hendrickson received taxable income in 2004, 2005, and 2006.  They have offered no credible evidence or meritorious legal arguments that the income they received is not taxable; their only arguments are frivolous.  Therefore they are liable for tax. The Hendricksons are not liable for penalties under section 6663(a) because they did not file valid returns for any of the years before us.  But we uphold for each year the section 6651(f) fraudulent failure to file addition to tax in the alternative. Mr. Hendrickson is also liable for section 6651(a)(2) additions to tax for 2005 and 2006.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[41]<u>See</u> <u>Morse v. Commissioner</u>, 419 F.3d at 833-835 (holding that sentencing court's restitution order does not preclude Commissioner from litigating defendant's civil deficiency); <u>Hickman v. Commissioner</u>, 183 F.3d 535, 537-538 (6th Cir. 1999) (same), <u>aff'g</u> T.C. Memo. 1997-566.