# United States Tax Court

T.C. Memo. 2022-92

ERIC D. CLARKSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16804-21L.                    Filed September 7, 2022.

————

Eric D. Clarkson, pro se.

*Marissa J. Savit* and *Thomas A. Deamus*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case petitioner seeks review pursuant to section 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of intent to levy.[1] The notice relates to petitioner's liability for frivolous return penalties imposed for submissions he made to the IRS for tax years 2003–2016. *See* § 6702(a). Respondent has filed a Motion for Summary Judgment under Rule 121, contending that there are no disputes of material fact, that petitioner is liable for the penalties as a matter of law, and that the settlement officer (SO) did not abuse her discretion in sustaining the proposed levy. We agree and accordingly will grant the Motion.

———

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                   *Background*

The following facts are derived from the parties' pleadings and motion papers, including accompanying declarations and exhibits. *See* Rule 121(b). Petitioner resided in New Jersey when he filed his Petition.

Petitioner failed to file timely Federal income tax returns for every year from 2003 to 2016. Using information supplied in third-party reports, the IRS prepared a substitute for return for each year and issued petitioner notices of deficiency. As of June 2020 his total balance due was more than $250,000.

Petitioner is no stranger to this Court. He initially petitioned the Court on October 28, 2015, docket No. 27236-15, disputing the notices of deficiency for 2003–2008. We dismissed that case for lack of jurisdiction on February 3, 2016. *See* § 6213(a). Petitioner did not challenge the notices of deficiency for 2009–2012, and the IRS duly assessed the tax for those years. He petitioned this Court, docket No. 14156-16L, challenging collection action with respect to those liabilities. We granted summary judgment in respondent's favor on March 24, 2017, rejecting petitioner's challenge to his underlying tax liabilities for 2009–2012 and sustaining the collection action.

Throughout 2017 the IRS sent petitioner various letters about his filing and payment obligations, including a Letter 3174 (warning of impending levy action for 2003–2012) and a Letter 729 (asking that he submit tax returns for 2013–2015). On September 27, 2017, petitioner replied to these letters by submitting a signed Form 1040, U.S. Individual Income Tax Return, for every year from 2003 to 2015 inclusive. He explained that he intended these submissions to satisfy the IRS's request for delinquent returns. He asked that the "record . . . be corrected" to reflect that, in the light of the data he put on the Forms 1040, "there has never been any tax due or owing." He had previously submitted, on April 19, 2017, a substantially similar signed Form 1040 for 2016.

Petitioner reported the following on the Form 1040 for 2003:

| Wages, salaries and tips | -0- |
|---|---|
| Adjusted gross income | -0- |
| Federal income tax withheld | $3,035.36 |
| Overpayment and refund requested | 3,035.36 |

[*3] To this Form 1040 he attached a Form 4852, Substitute for Form W–2, Wage and Tax Statement. He created this Form 4852 himself to replace the Form W–2 that had been issued to him by Adolph Farmer Construction, Inc., reporting wages that the company had paid him during 2003. He checked a box falsely asserting that he had been "unable to obtain" or had "received an incorrect" Form W–2.

Petitioner placed the following entries on the Form 4852 he created for 2003:

| Wages, tips, and other compensation | -0- |
|---|---|
| Federal income tax withheld | $1,962.04 |
| State income tax withheld | 417.10 |
| Social Security tax withheld | 869.88 |
| Medicare tax withheld | 203.44 |

To explain why the entry for wages was zero, despite the withholding of tax, petitioner asserted that he had not received "any 'wages' as defined in section 3401(a) and section 3121(a)." He added that all other numbers were derived from "the W–2 sent to me."

To his Form 1040 for 2003 petitioner also attached a Form 1099–MISC, Miscellaneous Income. Forms 1099–MISC are issued by payers of income to payees. But petitioner created this Form 1099–MISC himself, putting zero in the box for "Nonemployee compensation" and showing no tax withheld. He asserted that this was a "corrected" Form 1099–MISC that was intended to "rebut" the Form 1099–MISC issued to him by Ahera Consultants, Inc. (Ahera), the payer of the income. Petitioner wrote:

> The form is NOT INTENDED to represent a corrected 1099–MISC filed by the party identified therein as "PAYER." The corrected form 1099–MISC herein presented, is submitted to "rebut" a document known to have been submitted by the party identified therein as the "PAYER" which or who erroneously alleges a payment or payments to the party identified therein as "RECIPIENT" of "gains, profit or incomes" within the meaning of relevant law, which they ARE NOT.
>
> The payments made to me by this "PAYER" did not result from any federally taxable activity whatsoever and do not

[*4]     constitute any taxable income under relevant income tax law . . . . [T]his payer is not connected with any activity or of any status which would render payments to me subject to federal income excise tax, nor am I.

Petitioner reported the following on the Forms 1040 he submitted for 2004–2016:

| Wages, salaries and tips | -0- |
|---|---|
| Adjusted gross income | -0- |
| Federal income tax withheld | -0- |
| Overpayment and refund requested | -0- |

To each Form 1040 he attached a "corrected" Form 1099–MISC. Each form mirrored the "corrected" Form 1099–MISC he submitted for 2003, and he appended to each the same explanation. He asserted that each "corrected" Form 1099–MISC was intended to "'rebut' . . . submi[ssions] by the party identified therein as 'PAYER.'"

The IRS sent petitioner's Forms 1040 for 2003–2016 to its Frivolous Returns Program (FRP). FRP, in turn, sent petitioner Letters 3176C warning him that his submissions constituted frivolous tax returns and that, if he did not withdraw them, he would incur a penalty of $5,000 for each submission.

Petitioner neither amended nor withdrew the Forms 1040 he had submitted. Instead, in a reply dated March 24, 2018, he reiterated and elaborated upon the arguments he had made previously. He argued that he was not an "employee of a corporation or employee of a partnership" and that he had no "duty . . . concerning . . . tax-related matters of any kind." He asserted that he had received no "wages as defined in section 3401(a)" and that his "corrected" Forms 1099–MISC were intended to "rebut allegations made by others" that he had been paid taxable compensation. He expressed disagreement with the IRS's characterization of his Forms 1040 as "submissions," insisting that they were proper "returns" that the IRS must accept and process. He asserted that these "returns" could not legally be "withdraw[n] and replace[d]" even if he had wished to do so.

Lucy Bordley, an examining agent in FRP, proposed a $5,000 penalty for each of the Forms 1040 that petitioner had submitted. She prepared 14 separate Forms 8278, Assessment and Abatement of

[*5] Miscellaneous Civil Penalties, recommending assertion of penalties totaling $70,000. Ms. Bordley signed each form as the "originator" of the penalties; she signed the forms for 2003–2005 on September 6, 2018, and she signed the forms for 2006–2016 on September 11, 2018. Michael Schofield, her immediate supervisor, signed each Form 8278 on September 13, 2018, as the "approver" of the penalties. On November 19, 2018, the IRS assessed the penalties for 2003–2015, and on April 15, 2019, it assessed the penalty for 2016.

Petitioner did not pay any of the penalties. In an effort to collect these unpaid liabilities, the IRS issued him, on November 25, 2019, a Notice of Intent to Levy and Your Right to a Hearing (levy notice). Petitioner timely requested a CDP hearing, stating that he was disputing his penalty liabilities for all 14 years. As the basis for his challenge, he asserted that he did not owe the penalties because he "did not submit any frivolous returns." He demanded that the IRS "release the hold on [his] returns" and "process them." He repeated his earlier arguments that he had no Federal tax liabilities because he was not a "federal employee or one engaged in any government privileged activity that would give rise to any federal tax liability." He did not request a collection alternative.

An SO in the IRS Independent Office of Appeals was assigned to petitioner's CDP case. The SO reviewed petitioner's file and verified that the penalties had been properly assessed and that all other requirements of applicable law and administrative procedure had been satisfied. He confirmed that, before the initial determination of the penalty assessments, supervisory approval had been obtained in compliance with section 6751(b)(1).

On October 21, 2020, the SO sent petitioner a letter scheduling a telephone conference and requesting (among other things) a detailed written explanation as to why petitioner believed the penalties to be improper. Petitioner replied by letter dated October 30, 2020, denying that his returns were frivolous and requesting that the CDP hearing be conducted by written correspondence. He asked the SO to send him a copy of the administrative file, which the SO did on November 9, 2020.

By letter dated December 3, 2020, the SO agreed to conduct the hearing via written correspondence. The letter explained why the IRS considered the documents petitioner had submitted to be "frivolous tax returns": The "corrected" Forms 1099–MISC showing income of zero for 2003–2016, like the Form 4852 petitioner created showing wages of zero

[*6] for 2003, were plainly inconsistent with the Forms 1099–MISC and the Form W–2 that the payers had actually issued to petitioner and supplied to the IRS. The SO gave petitioner until January 5, 2021, to submit any relevant information.

The SO's December 3 letter crossed in the mail with a letter petitioner sent on December 1. Petitioner denied that his tax returns were frivolous; he again argued that the Federal income tax is imposed only on Federal employees and those engaged in a "Federally connected 'trade or business' as that term is defined in 26 USC 7701(a)(26)." Because petitioner received compensation from a "non-governmental, for-profit, private sector business," his earnings were assertedly exempt from taxation.

Petitioner's last letter to the SO was dated January 3, 2021. He declined to submit any of the documents the SO had requested (other than the explanation, already supplied, as to why his Forms 1040 were supposedly not frivolous). He said that he was unable to submit a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, because he considered himself to be neither.

The SO received no further documents or communications from petitioner. After balancing the appropriateness of the collection action against its intrusiveness, the SO prepared to close the case. After a pause attributable to the COVID-19 pandemic, the SO on April 12, 2021, issued a notice of determination concluding that the frivolous return penalties had been properly assessed and sustaining the levy notice for all 14 years.[2]

Petitioner timely petitioned this Court on May 17, 2021. He contended that his Form 1040 submissions to the IRS for 2003–2016 were not frivolous returns and that supervisory approval of the assessed penalties, as documented by the Forms 8278, was improperly obtained. On February 10, 2022, respondent filed the Motion for Summary Judgment, which petitioner timely opposed.

---

[2] After this notice of determination was issued, the IRS assessed additional frivolous return penalties against petitioner. But we have jurisdiction over only the penalties upheld in the notice of determination. *See* §§ 6320(C), 6330(d)(1); Rule 330(b); *Offiler v. Commissioner*, 114 T.C. 492, 498 (2000).

**[\*7]**                    *Discussion*

A.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts showing a genuine dispute for trial. Rule 121(d). We find that the questions presented are appropriate for summary adjudication.

B.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). A taxpayer may challenge his underlying liability at a CDP hearing if he did not receive a statutory notice of deficiency for that liability or did not otherwise have a prior opportunity to dispute it. § 6330(c)(2)(B). Where the taxpayer's underlying liability is not properly in dispute, we review the IRS decision for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Frivolous return penalties imposed under section 6702(a) are "assessable penalties" not subject to deficiency procedures. *See* § 6703(b). Petitioner did not receive, and could not have received, a statutory notice of deficiency that would have enabled him to petition this Court for redetermination of the penalties. Petitioner was thus entitled to challenge his underlying liabilities for the penalties during his CDP hearing. We review the SO's resolution of this issue de novo.

[*8] C.   *Underlying Liability*

1.   *Frivolous Tax Return Penalties*

Section 6702(a) imposes a civil penalty of $5,000 for filing "frivolous tax returns."  In any proceeding involving the issue of liability for a section 6702(a) penalty, "the burden of proof with respect to such issue shall be on the Secretary."  § 6703(a); *see Osband v. Commissioner*, T.C. Memo. 2013-188, 106 T.C.M. (CCH) 124, 128.[3]

A frivolous return penalty applies where three conditions are met.  First, the taxpayer must have filed a document that "purports to be a return of a tax imposed by this title."  § 6702(a)(1).  Second, the purported return must be a document that either "does not contain information on which the substantial correctness of the self-assessment may be judged" or "contains information that on its face indicates that the self-assessment is substantially incorrect."  § 6702(a)(1).  Third, the taxpayer's conduct must either be "based on a position which the Secretary has identified as frivolous" or must "reflect[] a desire to delay or impede the administration of Federal tax laws."  § 6702(a)(2).  Congress directed the IRS to prescribe and periodically revise "a list of positions which the Secretary has identified as being frivolous for purposes of this subsection."  § 6702(c).

Courts generally look to the face of the document to determine whether a purported return is "frivolous."  *See Grunsted v. Commissioner,* 136 T.C. 455, 459 (2011); *Callahan v. Commissioner*, 130 T.C. 44, 51 (2008); *Yuen v. United States*, 290 F. Supp. 2d 1220, 1224 (D. Nev. 2003).  If a purported return reflects a position that the IRS has identified as "frivolous," then the taxpayer's belief in the correctness of his position cannot serve as a defense to the penalty.  *See Hudson v. United States*, 766 F.2d 1288, 1291 (9th Cir. 1985) (per curiam); *Alexander v. Commissioner*, T.C. Memo. 2012-75, 103 T.C.M. (CCH) 1405, 1407; *Lindberg v. Commissioner*, T.C. Memo. 2010-67, 99 T.C.M. (CCH) 1273,

---

[3] Petitioner errs in contending that respondent has not met the requirements of Rule 36(b) that "the answer shall contain a clear and concise statement of every ground, together with the facts in support thereof on which the Commissioner relies and has the burden of proof."  Taken as a whole, respondent's answer meets the requirements of Rule 36(b) and gives petitioner "fair notice of the matters in controversy and the basis for their respective positions."  Rule 31(a); *see Warshaw v. Commissioner*, T.C. Memo 1992-401; *Trasatti v. Commissioner*, T.C. Memo. 1989-448.

[*9] 1278; *Vaughn v. United States*, 589 F. Supp. 1528, 1532 (W.D. La. 1984).[4]

We conclude that petitioner's submissions satisfy all three conditions specified in section 6702(a) for a "frivolous return." First, each of his 14 submissions "purport[ed] to be a return of a tax." *See* § 6702(a)(1). Each submission was made on a Form 1040 and each bore his original signature. None of the Forms 1040 was marked "copy" or otherwise indicated that the IRS should not process it as a return of tax. *Cf. Kestin v. Commissioner*, 153 T.C. 14, 17, 19, 26 (2019) (declining to impose section 6702(a) penalties where the taxpayer submitted six copies of a previously filed return, each marked "photocopy – do not process").

Petitioner submitted the Forms 1040 for 2003–2015 with a cover letter identifying them as his response to the IRS's request that he submit returns for 2013–2015. These submissions are virtually identical to the Form 1040 for 2016 that he had submitted a few months earlier. *See Whitaker v. Commissioner*, T.C. Memo. 2017-192, 114 T.C.M (CCH) 377, 380 (holding that a Form 1040 submitted in response to a notice instructing the taxpayer to file a corrected return within 30 days was a purported return).

Petitioner repeatedly characterized his Form 1040 submissions as "tax returns." Indeed, when FRP sent him Letters 3176C warning that it considered his "submissions" frivolous and offering him the opportunity to withdraw them, he replied that they were not mere "submissions" and demanded that the IRS process them as "returns." *See Jaxtheimer v. Commissioner,* T.C. Memo. 2019-164, 118 T.C.M. (CCH) 483, 486 (concluding that the taxpayer's characterization of his submissions as tax returns showed that the documents purported to be tax returns), *aff'd*, 854 F. App'x 263 (10th Cir. 2021).

Second, petitioner's purported returns "contain[ed] information that on its face indicate[d] that the self-assessment [was] substantially incorrect." *See* § 6702(a)(1)(B). Each Form 1040 that petitioner

---

[4] Because petitioner's 2003–2012 tax liabilities had been finally determined by this Court by the time he submitted the Forms 1040, it is unclear what effect he intended his submissions to have for tax years 2003–2012. But these circumstances do not prevent the IRS from imposing a frivolous return penalty where a taxpayer "files what purports to be a return of tax." § 6702(a)(1). A taxpayer may be penalized for filing a frivolous return even if he was not required to file a return or owed no tax for the year in question. *See Lister v. United States*, 77 F. App'x 465, 466 (10th Cir. 2003); *Bradley v. United States*, 817 F.2d 1400, 1403 (9th Cir. 1987).

**[\*10]** submitted reported zero taxable income. He attached to each Form 1040 a "corrected" Form 1099–MISC that he said was intended to "rebut" the Form 1099–MISC issued by Ahera, the payer of his income. By way of explanation, he asserted that Ahera's payments to him were "not the result [of] any federally taxable activity whatsoever and do not constitute any taxable income." Petitioner thus conceded that he received payments from Ahera and advanced a common tax protester argument—the same argument he later adopted in the CDP hearing and in his filings with this Court—that private sector employees are not subject to Federal income tax. Because this is a frivolous argument, his Forms 1040 indicated on their face that his self-assessment was "substantially incorrect." *See* § 6702(a)(1)(B).

Assuming arguendo that petitioner did not intend to advance this tax protester argument, then each of his returns "does not contain information on which the substantial correctness of the self-assessment may be judged." *See* § 6702(a)(1)(A). In that event, petitioner's returns conceded that he received income but reported it as nontaxable, without any explanation. *See Olson v. United States*, 760 F.2d 1003, 1005 (9th Cir. 1985) (per curiam) (finding section 6702(a)(1)(A) satisfied where a return listing zero taxable income was accompanied by a Form W–2 reporting wages, which was marked "incorrect" but "made no attempt to explain th[e] discrepancy").

Third, petitioner's conduct was "based on a position [that] the Secretary has identified as frivolous." *See* § 6702(a)(2)(A). All the Forms 1040 petitioner submitted were "zero returns." The Secretary long ago identified as frivolous the position that a taxpayer can "elect to file a tax return reporting zero taxable income and zero tax liability even if [he] received taxable income." Notice 2010-33, 2010-17 I.R.B. 609, 609; *see also* Rev. Rul. 2004-34, 2004-1 C.B. 619. The courts have agreed that "zero returns" reflect frivolous positions. *Grunsted*, 136 T.C. at 460; *see also Olson*, 760 F.2d at 1005.

Petitioner's "zero returns" were based on his assertions that wages are not income and that the Federal Government has no authority to tax private sector income. Similar statements often accompany "zero returns" filed by tax protesters. *See, e.g., Smith v. Commissioner*, T.C. Memo. 2021-29, 121 T.C.M. (CCH) 1195, 1197; *Hendrickson v. Commissioner*, T.C. Memo. 2019-10, 117 T.C.M. (CCH) 1041, 1043, *aff'd per order*, 2020 WL 2563412 (6th Cir. 2020). The Secretary has identified these arguments as "frivolous positions." Notice 2010-33, 2010-17 I.R.B. at 609. And the courts have repeatedly done the same. *See, e.g., Walker*

[*11] *v. Commissioner*, T.C. Memo. 2022-63; *Briggs v. Commissioner*, T.C. Memo. 2016-86; *Lovely v. Commissioner*, T.C. Memo. 2015-135, *aff'd per curiam*, 642 F. App'x 268 (4th Cir. 2016).[5]

In sum, respondent has carried his burden of establishing that all 14 of petitioner's submissions satisfy the three conditions specified in section 6702(a) for a "frivolous tax return." Petitioner is therefore liable for a $5,000 penalty for each Form 1040 that he filed.

### 2. *Supervisory Approval of Penalties*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Written supervisory approval must therefore be obtained before a section 6702(a) penalty is assessed. But approval need not be secured before the Commissioner sends the taxpayer a Letter 3176C extending the opportunity to recant and avoid the penalty. *See Kestin*, 153 T.C. at 28–30.

The administrative record includes 14 distinct civil penalty approval forms, each on a Form 8278. Ms. Bordley, the "originator" of the penalties, signed those forms on September 6 and 11, 2018. Mr. Schofield, Ms. Bordley's immediate supervisor, signed each form as the "approver" of the penalties on September 13, 2018. Respondent has submitted a declaration under penalties of perjury averring that Mr. Schofield was Ms. Bordley's immediate supervisor at that time. Written supervisory approval of the proposed penalties was thus secured several months before the penalties were assessed, on November 19, 2018, and April 15, 2019, and communicated to petitioner.

Petitioner asserts that there are disputes of fact about whether the IRS actually complied with section 6751(b)(1). He contends that the IRS employee who averred in a sworn declaration that Mr. Schofield was Ms. Bordley's supervisor lacked personal knowledge of that fact; that the employee's signature on the declaration was somehow improper; that Mr. Schofield's signature on the Forms 8278 is illegible; and that

---

[5] *Hendrickson v. Commissioner*, T.C. Memo. 2019-10, involved Peter Hendrickson, the author of *Cracking the Code,* a compendium of tax protester nonsense. As we have previously noted, Hendrickson is a "felon and serial tax evader," and the positions he espoused in *Cracking the Code* are "so lacking in merit that they are sanctionable if sincerely believed." *Waltner v. Commissioner,* T.C. Memo. 2014-35, 107 T.C.M. (CCH) 1189, 1197, 1203, *aff'd*, 659 F. App'x 440 (9th Cir. 2016).

[*12] "M. Schofield" printed next to his signature may not refer to "Michael Schofield" but to some other IRS employee with the same first initial and last name.

We have repeatedly held that a supervisor's signature on a civil penalty approval form "is sufficient to satisfy the statutory requirements." *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 17 (2020). And we have regularly decided section 6751(b)(1) questions on summary judgment, on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv. Co. v. Commissioner*, 157 T.C. 136 (2021); *Thompson v. Commissioner*, T.C. Memo. 2022-80. We will do the same here. Petitioner's alleged factual disputes are entirely speculative. Rule 121(d) requires that a party opposing summary judgment set forth "specific facts," including facts established "by affidavits or declarations." Petitioner has failed to do so, and it seems clear that he interposes these arguments for the purpose of delay.

D.    *Abuse of Discretion*

In deciding whether the SO abused his discretion in sustaining the collection action, we consider whether he (1) properly verified that the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3). Our review of the administrative record establishes that the SO properly discharged all of his responsibilities under section 6330(c).

Petitioner contends that the SO, lacking financial information about him, could not have properly balanced his interests with the need for efficient tax collection. But the only reason the SO lacked this information was that petitioner refused to provide it. And petitioner's rationale for refusing to provide it—that he could not complete a Form 433–A because he was neither a "wage earner" nor a "self-employed" person—was just another frivolous argument.

Petitioner proposed no collection alternative. An SO is not obligated to pursue a collection alternative where no such proposal is made. *See McLaine v. Commissioner,* 138 T.C. 228, 243 (2012). Finding no abuse of discretion in any respect, we will grant respondent's Motion and sustain the collection action.

**[\*13]** E.     *Frivolous Position Penalty*

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty, not in excess of $25,000, "[w]henever it appears to the Tax Court that—(A) proceedings before it have been instituted or maintained . . . primarily for delay, [or] (B) the taxpayer's position in such proceeding is frivolous or groundless."  The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial and IRS resources.  *Coleman v. Commissioner*, 791 F.2d 68, 71–72 (7th Cir. 1986); *Salzer v. Commissioner*, T.C. Memo. 2014-188, 108 T.C.M. (CCH) 284, 287.  "Frivolous and groundless claims divert the Court's time, energy, and resources away from more serious claims and increase the needless cost imposed on other litigants . . . ."  *Kernan v. Commissioner*, T.C. Memo. 2014-228, 108 T.C.M. (CCH) 503, 512, *aff'd*, 670 F. App'x 944 (9th Cir. 2016); *see Kile v. Commissioner*, 739 F.2d 265, 269–70 (7th Cir. 1984) ("[W]e can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments[.]"), *aff'g Basic Bible Church v. Commissioner*, 74 T.C. 846 (1980), *and Basic Bible Church of Am., Auxiliary Chapter 11004 v. Commissioner*, T.C. Memo. 1983-287.

Because we have not yet had occasion to warn petitioner about the risk he runs under section 6673(a)(1), we will not impose a penalty at this time.  But he is advised that he is likely to be penalized if he continues to raise frivolous arguments, either in this proceeding or in any future proceeding in this Court.

We have considered all arguments made by the parties and, to the extent not addressed above, find them to be irrelevant or without merit.  To reflect the foregoing,

*An appropriate order and decision will be entered.*